UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 22-1421 (NEB/JFD)

MARTIN JAMES TIRRELL,

        Petitioner,

v.

B. EISCHEN, FPC-Duluth Warden,

        Respondent.

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

## INTRODUCTION

Petitioner Martin Tirrell ("Tirrell") brings this 28 U.S.C. § 2241 habeas petition, seeking to have the U.S. Bureau of Prisons ("BOP" or "Bureau") calculate and immediately apply the First Step Act time credits ("FTCs") he has earned and his full good conduct time ("GCT") credits to his sentence computation, including to his percent of statutory term served. The petition should be dismissed for several reasons. Among these, Tirrell failed to exhaust his administrative remedies, his request to have his FTCs calculated is moot, his request to have his FTCs immediately applied to his sentence computation and percent of statutory term served is premature, and his requests to have his full GCT credits immediately credited and applied to his sentence computation and percent of statutory term served are moot and premature.

## BACKGROUND

### I.    Tirrell Is a Federal Prisoner in the State of Minnesota.

Tirrell, Register No. 19011-030, is incarcerated at the Federal Prison Camp at Duluth, Minnesota ("FPC Duluth"). *See* Winger Decl. ¶ 2, Ex. A at 1. He is serving a 41-

1

month term of imprisonment for mail fraud, in violation of 18 U.S.C. § 1341. *Id.* ¶ 3, Ex. A at 2. Tirrell's projected statutory release date is December 30, 2023, via a good conduct time release, but with the FTCs he has earned to date, he would have a projected release date of August 2, 2023. *Id.,* Ex. A at 3.

## II.   The First Step Act's Provisions Regarding Earned Time Credits

The First Step Act ("FSA") (P.L. 115-391), enacted into law on December 21, 2018, addresses reentry of the incarcerated, directing the Federal Bureau of Prisons to take specific actions regarding programming and programming incentives, good-time credit, and compassionate release, among other issues. Regarding programming and programming incentives, Congress directed the Attorney General to develop a risk and needs assessment system no later than 210 days after the enactment of the FSA, *i.e.*, July 19, 2019. 18 U.S.C. § 3632(a). The risk tool is to be used by the BOP to determine the recidivism risk and classify each inmate as having a minimum, low, medium, or high risk of recidivism. *Id.* § 3632(a)(1). The criminogenic needs assessment tool is to be used by the BOP to determine the type of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate. *Id.* § 3632(a)(3). Congress created a system of "time credits" and other incentives to encourage inmates to participate in programming. *Id.* § 3632(d).

### A.   The Risk and Needs Assessment Tool

On July 19, 2019, the Attorney General announced the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"), which had been developed consistent with the FSA. *See* U.S. Dep't of Justice, "*The First Step Act of 2018: Risk and Needs*

*Assessment System*," at iv ("Risk and Needs Report"), *available at* https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf.  The tool has been, and will continue to be, updated.  *See* U.S. Dep't of Justice, "*The First Step Act of 2018: Risk and Needs Assessment System – UPDATE*," dated January 2020 ("Risk and Needs Updated Report"), *available at* https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf; U.S. Dep't of Justice, "*First Step Act Annual Report*," dated April 2022, *available at* https://www.bop.gov/inmates/fsa/docs/First-Step-Act-Annual-Report-April-2022.pdf.  In addition to assessing an inmate's risk of recidivism, PATTERN also assesses the risk of violent or serious misconduct.  18 U.S.C. § 3632(a)(3).

The PATTERN tool assigns point values based on the following inmate characteristics: (1) current age; (2) sex offender status ("Walsh w/ Conviction") for male inmates; (3) whether the inmate has a violent offense; (4) criminal history points from the presentence investigation report; (5) history of escape; (6) history of violence; (7) whether the inmate has a high school diploma or GED or is working towards a GED; (8) whether drug programming is needed and, if so, what programming has been completed; (9) number of incident reports; (10) number of serious incident reports; (11) time since last incident report; (12) time since last serious incident report; (13) whether the inmate is refusing to participate in the Inmate Financial Responsibility Program; (14) number of programs completed; and (15) number of work programs.  *See Risk and Needs Updated Report* at 39-41 Appendix II.  Each level of recidivism risk is assigned a range of total points, and the range depends on gender and whether the inmate was convicted of a violent offense.  *See*

3

*Risk and Needs Report* at 58, Table 4.  A PATTERN score is not designed to be static; inmates are periodically reassessed.  18 U.S.C. § 3632(a)(4).

While the PATTERN score is determined by Unit Team staff, an inmate's criminogenic needs are assessed by staff with subject matter expertise in the need area, such as Education, Health Services, Psychology Services, and the Unit Team.  *See* Winger Ex. C at 2-4.  These criminogenic need areas include: (1) Anger/Hostility; (2) Antisocial Peers; (3) Cognitions; (4) Education; (5) Dyslexia; (6) Family/Parenting; (8) Finance/Poverty; (9) Medical; (10) Mental Health; (11) Recreation/Leisure/Fitness; (12) Trauma; and (13) Work.  Winger Decl. ¶ 6, Ex. C at 2.  The needs are dynamic factors which can change over time.  *Id.*  Need areas are determined based on a review of the inmate's pre-sentence investigation report, education records, and medical records.  *Id.* ¶ 7, Ex. C at 3.  Several needs are determined based on the inmate's completion of standardized assessment instruments, such as the Brief Anger Aggression Questionnaire (anger/hostility), Measures of Criminal Attitudes and Associates (antisocial peers and cognitions), and the Family Assessment Device Version 12 (family/parenting).  *Id.*  If an inmate does not complete the standardized instruments, the need areas are marked "refuse." *Id.*, Ex. C at 2.  An inmate's specific needs are tracked in the BOP's SENTRY inmate management system.  Winger Ex. C at 2.  Once BOP staff have determined an inmate's needs, they are to assign inmates to EBRR programming or productive activities based on those needs.  *Id.*; 18 U.S.C. § 3621(h)(1)(A).

4

## B.    Evidence-Based Recidivism Reduction (EBRR) Programming and Productive Activities

Congress established definitions of EBRR programs and productive activities.

Under the First Step Act, an EBRR program is specifically defined as:

either a group or individual activity that—

(A)    has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;

(B)    is designed to help prisoners succeed in their communities upon release from prison; and

(C)    may include—

 (i) social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

 (ii) family relationship building, structured parent-child interaction, and parenting skills;

 (iii) classes on morals or ethics;

 (iv) academic classes;

 (v) cognitive behavioral treatment;

 (vi) mentoring;

 (vii) substance abuse treatment;

 (viii) vocational training;

 (ix) faith-based classes or services;

 (x) civic engagement and reintegrative community services;

 (xi) a prison job, including through a prison work program;

 (xii) victim impact classes or other restorative justice programs; and

 (xiii) trauma counseling and trauma-informed support programs.

18 U.S.C. § 3635(3); *see also* 28 C.F.R. § 523.41(a).  A "productive activity" is "either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive, and thereby maintain a minimum or low risk of recidivating, and may include the delivery of the programs

described in paragraph (1)[1] to other prisoners."  18 U.S.C. § 3635(5); *see also* 28 C.F.R. § 523.41(b).

### C.  Incentives for Participation in EBRR Programming and Productive Activities

In creating the risk and needs system, Congress included incentives in the system to encourage inmate participation in assigned EBRR programming and productive activities. *See* 18 U.S.C. § 3632(a) (indicating the "risk and needs assessment system" is referred to as the "System"); 18 U.S.C. § 3632(d) (indicating what "incentives and rewards for prisoners to participate in a complete evidence-based recidivism reduction program" the System "shall provide").  Incentives range from increased telephone and visitation privileges, *see* 18 U.S.C. § 3632(d)(1), to facility transfers, *see* 18 U.S.C. § 3632(d)(2), to First Step Act "time credits" (FTCs):

> (A)    In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> > (i)    A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
> >
> > (ii)    A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A).

---

[1] Referring to 18 U.S.C. § 3635(1), which defines dyslexia.

### D. Earning and Applying Time Credits

In order to earn FTCs, the inmate must be "successfully participating" in EBRR programs or productive activities. 28 C.F.R § 523.41(c)(1). "Successful participation" is when the inmate (1) has participated in an EBRR program or productive activity based on the inmate's risk and needs assessment, and (2) complies with the requirements for that EBRR program or productive activity. 28 C.F.R. § 523.41(c)(2). Temporary interruptions that prevent the inmate from participating in the EBRR program or productive activity will ordinarily not affect the inmate's "successful participation." 28 C.F.R. § 523.41(c)(3). However, the following situations can indicate the inmate is not "successfully participating":

(i)    Placement in a Special Housing Unit;

(ii)   Designation status outside the institution (*e.g.*, for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

(iii)  Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.*, on state or Federal writ, transfer to state custody for service of sentence, etc.);

(iv)   Placement in mental health/psychiatric holds; or

(v)    "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

28 C.F.R. § 523.41(c)(4).

Congress indicated inmates may not earn FTCs for EBRR programs or productive activities they successfully completed "prior to the date of enactment of this subchapter," 18 U.S.C. § 3632(d)(4)(B), which the BOP has determined is December 21, 2018, the date

7

of enactment of the First Step Act, *see* 28 C.F.R. § 523.42(b)(1). Because the BOP was not equipped to administratively track inmates' participation in EBRR programs or productive activities in relation to their assessed needs, eligible inmates may earn FTCs for any programming and activities in which they participated from December 21, 2018, until January 14, 2020. *See* 28 C.F.R. § 523.42(b)(2); *see also* Bureau of Prisons, "*FSA Time Credits,*" 87 Fed. Reg. 2705, 2708 (Jan. 19, 2022). On or after January 15, 2020, an eligible inmate may earn FTCs for successful participation in EBRR programs and productive activities recommended by BOP staff based on their individual needs. 28 C.F.R. § 523.42(b)(3). FTCs will be earned for "every thirty-day period that an eligible inmate has successfully participated" in EBRR programs or productive activities. 28 C.F.R. § 523.42(c). The BOP abandoned its proposed rule that inmates would be required to complete eight hours of programming to establish a day of programming. *See* 87 Fed. Reg. at 2706-07.

Congress included a series of limitations on when FTCs could be earned, who could earn FTCs, who could "apply" FTCs, and under what circumstances FTCs could be reduced. First, inmates may not earn FTCs for EBRR programs or productive activities they successfully completed prior to the commencement of their sentence. 18 U.S.C. § 3632(d)(4)(B); 28 C.F.R. § 523.42(a). Second, Congress precluded inmates from earning FTCs if they were serving sentences for one of many enumerated crimes. 18 U.S.C. § 3632(d)(4)(D). Third, while deportable aliens appear to be eligible to earn FTCs, they cannot "apply," or claim, their FTCs. *Id.* § 3632(d)(4)(E). Fourth, the BOP was directed to develop guidelines for the loss of FTCs for disciplinary violations and for their

subsequent restoration. *Id.* § 3632(e); 28 C.F.R. §§ 523.43, 541.3, Table 1.

FTCs "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. §§ 3632(d)(4)(C), 3624(g); 28 C.F.R. § 523.44(b)-(d). Under 18 U.S.C. § 3624(g), an inmate eligible to apply their FTCs is someone who:

(A)   has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B)   has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C)   has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D)   (i)   in the case of a prisoner being placed in prerelease custody, the prisoner--

(I)   has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II)   has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa)   the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb)   the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc)   the prisoner is unlikely to recidivate; or

>        (ii)    in the case of a prisoner being placed in supervised release,
>                the prisoner has been determined under the System to be a
>                minimum or low risk to recidivate pursuant to the last
>                reassessment of the prisoner.

18 U.S.C. § 3624(g)(1); 28 C.F.R. § 523.43(b)-(d).   Placement on pre-release custody

includes either placement at a residential reentry center ("RRC") or home confinement for

the amount of FTCs earned, *see* 18 U.S.C. § 3624(g)(2), and any time limits on the length

of a pre-release placement are waived,[2] *see id.* § 3624(g)(1).  If the inmate has a term of

supervised release imposed as part of their sentence, "the Director of the Bureau of Prisons

may transfer the prisoner to begin any such term of supervised release at an earlier date,

*not to exceed 12 months*."  *Id.* (emphasis added); *see* 28 C.F.R. § 523.44(d).

## III.    Tirrell's First Step Act Time Credits

Tirrell is eligible to earn FTCs under 18 U.S.C. § 3632(d).  Winger Decl. ¶ 4, Ex.

B.  He has been scored a Minimum on the PATTERN Risk Tool since his first assessment

in February 2021.  *Id.* ¶ 5, Ex.  B.  His current FSA needs are as follows:

| | |
|---|---|
| Anger/Hostility – No | Medical – No |
| Antisocial Peers – No | Mental Health – No |
| Cognitions – No | Recreation/Leisure/Fitness – No |
| Dyslexia – No | Substance Abuse – Yes |
| Education – No | Trauma – No |
| Family/Parenting – Yes | Work – Yes |
| Finance/Poverty – Yes | |

---

[2] *See* 18 U.S.C. § 3624(c)(1) (limiting pre-release placement in an RRC to 12 months); *see also* 18 U.S.C. § 3624(c)(2) (limiting pre-release placement on home confinement to the shorter of 10 percent of the term of imprisonment or 6 months).

Winger Decl. ¶ 8, Ex. B at 1.  Tirrell is currently on the waiting list for, participating in, or has completed the following EBRR programs and productive activities: Money Smart, Inside Out Dad, National Parenting Program, and Drug Education.  *Id.* ¶ 9, Exs. D, E, F.

The BOP is in the process of incorporating FTC tracking capabilities into SENTRY and updating sentencing computations.  *Id.* ¶ 10.  The BOP's current focus is updating sentence computations for inmates closest to their release dates, like Tirrell, and the BOP will then move on to inmates with later release dates.  *Id.*  The BOP's Central Office has determined that Tirrell has earned approximately 150 days of FTCs as of July 13, 2022.[3] *Id.* ¶ 11.  Tirrell's sentence computation has been updated to reflect the 150 days of FTC he has earned.  *Id.*, Ex. A at 3.  Regardless of whether FTCs are incorporated into SENTRY and reflected on a sentence computation, FTCs do not change the "percent of statutory term served" on an inmate's sentence computation.  *Id.*

## IV.    Good Conduct Time under the First Step Act

As amended by the First Step Act of 2018, 18 U.S.C. § 3624 provides the following method for calculating GCT:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence of *up to 54 days for each year of the prisoner's sentence imposed by the court*, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

---

[3] This total may change when the SENTRY TC calculation function is activated.  Winger Decl. ¶ 11.

18 U.S.C. § 3624(b)(1) (emphasis added).  GCT vests on the date of the inmate's release from custody.  18 U.S.C. § 3624(b)(2).

## V.  Tirrell's Sentence Computation and GCT under the First Step Act

The BOP recently completed a comprehensive audit of Tirrell's sentence computation.  Colston Decl. ¶¶ 5-22.  The computation commences his 41-month federal sentence on February 26, 2021, the date he voluntarily surrendered to his designated facility.  *Id.* ¶ 18, Ex. A at 3, Ex. G at 2-3.  He received a total of 24 days of prior custody credit, from February 13, 2019, through February 21, 2019, and from February 13, 2020, through February 27, 2020.  *Id.* ¶ 19, Ex. A at 3, Ex. G at 4.

Tirrell is earning 54 days of GCT for each year of his term of imprisonment and, as of June 6, 2022, is projected to earn a total of 184 days of GCT on his 41-month sentence before his release.  *Id.* ¶ 20, Ex. A at 3.  With his projected 184 days of GCT taken into account, Tirrell has served 46.1 percent of his statutory term.  *Id.*  His projected statutory release date is December 30, 2023, via a good conduct time release.[4]  *Id.*  Tirrell's GCT will not become vested until the date of his release.  18 U.S.C. § 3624(b)(2).

## VI.  The Bureau's Administrative Remedy Program

The Bureau has established a multi-tier administrative remedy program that affords inmates confined in federal institutions the opportunity to voice any concerns regarding their confinement, and which provides BOP staff an opportunity to resolve issues internally prior to an inmate seeking relief through the judicial system.  The BOP's remedy program

---

[4] With his 150 days of FTCs included, Tirrell's projected release date is August 2, 2023. Colston Ex. A at 3.

requires an inmate to: (1) attempt informal resolution of the grievance by submitting a Request for Informal Resolution form ("BP-8") to unit staff and, if unsuccessful, file a formal Request for Administrative Remedy form ("BP-9") with the Warden within 20 days of the event triggering the inmate's complaint; (2) if dissatisfied with the Warden's response, appeal to the appropriate Regional Director by filing a Regional Office Administrative Remedy Appeal form ("BP-10") within 20 days of the date of the Warden's response; and (3) if dissatisfied with the Regional Office's response, appeal to the Director, National Inmate Appeals, in the Office of General Counsel by filing a Central Office Administrative Remedy Appeal form ("BP-11") within 30 days of the date of the Regional Office's response.  28 C.F.R. §§ 542.13 - 542.15.  An inmate may not raise an issue in an appeal that was not raised in a lower-level filing.  *Id.* § 542.15.  An inmate is not considered to have exhausted his administrative remedies until a response is received from the Central Office, unless the time allotted for its reply is exceeded.  *Id.* §§ 542.15, 542.18.

## VII.   Tirrell's Administrative Remedies

As of July 13, 2022, Tirrell has filed or attempted to file two administrative remedies during his incarceration with the BOP.  Winger Ex. A at 2.  He has not filed any administrative remedy requests regarding his FTCs or GCT.   Winger Decl. ¶ 12, Ex. A.

## ARGUMENT

Tirrell seeks to have the FTCs he has earned calculated and immediately applied to his sentence computation, including to his percent of statutory term served.  *See* ECF No. 1 at 2, 6-8.  He also seeks to have his full GCTs credited and applied to his sentence computation and percent of statutory term served.  *Id.* at 7-8.  The petition should be

13

dismissed because Tirrell failed to exhaust his administrative remedies and because his request to have the BOP calculate his FTCs is moot, his request to have his FTCs immediately applied to his sentence computation and percent of statutory term is premature, and his requests to have his full GCT credited and applied to his sentence and percent of statutory term are moot and premature.

## I.   The Petition Should Be Dismissed.

### A.   Tirrell's Petition Should Be Dismissed for Failure to Exhaust Administrative Remedies.

A federal prisoner wishing to challenge an action of the BOP must ordinarily exhaust administrative remedies before seeking extraordinary relief in a § 2241 petition. *See Mathena v. United States*, 577 F.3 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam); *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). However, "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional." *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007). Because exhaustion is not jurisdictional, courts may

create exceptions to the exhaustion requirement. *Frango v. Gonzales*, 437 F.3d 726, 728-29 (8th Cir. 2006).

In determining whether a prisoner should be required to exhaust administrative remedies, courts exercise their discretion by "balanc[ing] the interests of the individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). Exhaustion protects administrative agency authority and promotes judicial economy. *Id.* at 144-45. Habeas petitioners can be excused from exhausting administrative remedies if they can show that proceeding through the remedy process would be futile and would serve no useful purpose. *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004). However, the Eighth Circuit Court of Appeals has held that a federal district court may err by considering the merits of a petition for a writ of habeas corpus when the petitioner "failed to demonstrate he had" properly exhausted his administrative remedies prior to seeking habeas corpus relief. *United States v. Thompson*, 297 F. App'x 561, 562 (8th Cir. 2008) (per curiam).

Tirrell claims he spoke with FPC Duluth staff regarding his FTCs and was advised there was nothing they could do. ECF No. 1 at 3, 8. However, Tirrell failed to file any formal administrative remedy requests to seek resolution of his concerns and to receive detailed answers from the BOP's Regional and Central Offices regarding the FTCs and GCT he seeks to have applied. *See* Winger Decl. ¶ 12, *see generally* Ex. G.

The administrative remedy process provides the avenue for the BOP to create an administrative record regarding why Tirrell's requests to BOP staff to have his FTCs

calculated and applied may have been denied and gives him an opportunity to argue why the BOP's reasons were incorrect. Requiring exhaustion of administrative remedies would create an administrative record which would aid the Court in reviewing his FTC and GCT issues in the future, if necessary.

Exhaustion would not be futile under the circumstances presented in this petition. Tirrell has sufficient time to exhaust his administrative remedies on his FTC and GCT issues because his statutory release date is not until December 30, 2023. *See* Winger Decl. ¶ 3, Ex. A at 1. Tirrell's petition should be dismissed due his failure to exhaust. *See Elwood,* 386 F.3d at 844 n.1; *Thompson,* 297 F. App'x at 562.

### B. Tirrell's Request to Have the BOP Calculate His Time Credits Should Be Dismissed as Moot.

There must be an actual, ongoing case or controversy for a federal court to have subject-matter jurisdiction. U.S. Const. art. III, § 2; *Potter v. Norwest Mortgage, Inc.*, 329 F.3d 608, 611 (8th Cir. 2003). When the disputed matter has already been resolved, or it otherwise becomes impossible for the court to grant relief to the party who initiated the action, a case or controversy becomes moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996); *Missouri v. Craig*, 163 F.3d 482, 484-85 (8th Cir. 1998). An action must be dismissed when a case becomes moot, unless the issue is reasonably likely to be raised again between the parties and is too short in its duration to be fully litigated prior to its cessation. *Missouri v. Craig*, 163 F.3d at 484-85 (*citing Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)); *Potter*, 329 F.3d at 611. In *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005), the Eighth Circuit Court of Appeals discussed two variants of mootness: Article III mootness and

16

prudential mootness.  Noting that the petitioner's release could (but did not automatically) moot the habeas petition in the Article III sense, *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998), the court still found the case "prudentially moot." *Id*. at 724.  The Eighth Circuit found the case prudentially moot due, in part, to its inability to provide an effective remedy at this time. *Id*.

A habeas petition should not be dismissed as moot if any of the following exceptions applies: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Ahmed v. Sessions*, No. 16-cv-2124 (DSD/HB), 2017 WL 3267738, at *2 (D. Minn. July 11, 2017) (internal citation omitted), *report and recommendation adopted*, 2017 WL 3268176 (July 31, 2017); *see also, e.g.*, *Scheper v. Rios*, No. 19-cv-402 (MDJ/ECW), 2020 WL 4060729, at *2-4 (D. Minn. June 5, 2020), *report and recommendation adopted*, 2020 WL 4059875 (July 20, 2020).

Tirrell requests that the Court require the BOP to "implement and credit" his FTCs, implicitly asking that the BOP be required to calculate the FTCs he has earned.  ECF No. 1 at 8.  His request to have his FTCs calculated has become moot because the BOP's Central Office has determined he has earned 150 days of FTCs as of July 13, 2022.  *See* Winger Decl. ¶ 11, Ex. A at 3.

Tirrell will continue to earn FTCs for the remainder of his term of imprisonment.  His FTCs will not be reduced absent a disciplinary infraction.  18 U.S.C. § 3632(e).

Because the BOP has calculated the FTCs Tirrell has earned as of July 13, 2022, this issue of the petition has become moot.  None of the exceptions to mootness apply. This portion of the petition should, therefore, be dismissed.

### C.     Tirrell's Claim That the BOP Is Required to Immediately Apply His FSA Time Credits Should Be Dismissed as Premature.

Under U.S. Const. art. III, federal courts are limited to hearing cases and controversies.  To establish standing, the party seeking relief must establish that it suffered an actual injury, traceable to the conduct of the adverse party, which is redressable by a favorable court decision.  One purpose of the standing requirement is to prevent hypothetical or speculative decisions that afford no true relief.  *See Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005); *Shain v. Veneman*, 376 F.3d 815, 817-18 (8th Cir. 2004).  A related principle, derived from the constitutional rule of standing, is that of ripeness.  *See Minn. PUC v. FCC*, 483 F.3d 570, 582-83 (8th Cir. 2007). Ripeness limits federal courts from considering issues prematurely, particularly where a court decision has the potential to interfere with the policies of government agencies.  *See id.*  As a general rule, a dispute is not ripe where it depends upon events that may not occur as anticipated or may not occur at all.  *See id.*  The Court should not address hypothetical or abstract questions, but rather definite and concrete disputes.  *See Neb. Public Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037-38 (8th Cir. 2000).

Tirrell asks that the Court order the BOP to immediately apply the FTCs he has earned to his sentence computation and percent of statutory term served.  ECF No. 1 at 8.

His claim should be dismissed because it is hypothetical and, therefore, not ripe at this point.

The First Step Act explicitly limits Tirrell's ability to apply his FTCs until the number of his FTCs is equal to the remainder of his term of imprisonment. *See* 18 U.S.C. § 3624(g)(1)(A). His projected statutory release date is December 30, 2023. *See* Winger Decl. ¶ 3, Ex. A at 3. As of July 13, 2022, Tirrell has only earned 150 days of FTCs. *See id.* ¶ 11. When Terrell's total FTCs equal the remainder of time on his sentence, the BOP will determine if he meets the criteria to transfer to a pre-release RRC or home confinement placement or to receive an early release. *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g). While the FTCs Tirrell has earned and continues to earn could afford him additional time in pre-release custody and potentially advance his release date, up to a maximum of 365 days, the FTCs he has earned cannot be applied to his sentence at this time because they do not equal the remainder of his term of imprisonment. *See* 18 U.S.C. § 3624(g)(1)(A).

Further, while Tirrell currently has a Minimum PATTERN score, *see* Winger Decl. ¶ 5, Ex. B at 1, his score could increase between now and when his FTCs equal the remainder of his sentence, which would impact his ability to apply the FTCs to his sentence. *See* 18 U.S.C. § 3624(g)(1)(B), (D)(ii). Finally, between now and when Tirrell can apply his FTCs, he could be subject to disciplinary action resulting in the loss of FTCs. *See* 18 U.S.C. § 3632(e); *see also* 28 C.F.R. § 523.43; 28 C.F.R. § 541.3, Table 1.

Tirrell attempts to create a concrete dispute by arguing that FTCs affect the percent of time served for purposes of qualifying for CARES Act home confinement and the elderly offender two-thirds date. ECF Doc. 1 at 7. He does not specifically allege he would

19

be eligible for either of these programs if his FTCs were included in his percent of statutory time served. *See generally id.* Moreover, an inmate's FTCs are not currently part of the time served component of an inmate's sentence. *See* Winger Decl. ¶ 11. As previously mentioned, the application of FTCs is too speculative at this point to consider them as part of the percent of time served because Tirrell's ability to claim FTCs depends on his PATTERN score at a later date and any disciplinary actions.

All of these possibilities render Tirrell's claim that his FTCs should be immediately applied to his sentence and percent of term served as purely speculative at this juncture. This claim should, therefore, be dismissed as premature.

### D. Tirrell's Good Conduct Time Credit Claims Should Be Dismissed as Moot and Premature.

Tirrell argues the BOP has unlawfully failed to credit his full 184 days of GCT to his percent of statutory term served. ECF No. 1 at 7-8. His claim should be dismissed as moot because the 184 days of GTC he is projected to earn by his release date *is* included in his percent of statutory term served. He also argues the BOP is unlawfully not "applying" his full 184 days of GCT to his sentence computation and percent of statutory term served. ECF No. 1 at 7-8. This claim should be dismissed as premature because his GCT does not vest until the date of his release.

Under the First Step Act's amended 18 U.S.C. § 3624(b)(1), GCT is applied as a credit of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to a determination by the BOP that, during that year, the prisoner has displayed exemplary compliance with institutional

regulations.  *See* Colston Decl. ¶ 16; 18 U.S.C. § 3624(b)(1).  GCT vests on the date of the

inmate's release date.  *See* Colston Decl. ¶ 16; 18 U.S.C. § 3624(b)(2).

GCT is tracked on an inmate's sentence computation as "Total GCT Earned" and

"Total GCT Earned and Projected."  *See* Colston Decl. ¶ 17.  The "Total GCT Earned"

represents the actual amount of GCT the inmate has earned as of the date the sentence

computation is run in SENTRY.  *Id.*  The "Total GCT Earned and Projected" amount

represents the total possible amount of GCT the inmate can earn on his sentence, less any

GCT he has lost as the result of disciplinary sanctions.  *Id.*  This projection is taken into

account in setting the "Statutory Release Date Projected" and in the "Percent of Statutory

Term Served."  *Id.*

The BOP has calculated Tirrell's projected GCT consistent with the current version

of § 3624(b)(1).  His 41-month federal sentence commenced on February 26, 2021.  *See*

Colston Decl. ¶ 18, Ex. A at 3.  He received a total of 24 days of prior custody credit.  *See*

*id.* ¶ 19, Ex. A at 3.  Tirrell is earning up to 54 days of GCT each year, and his sentence

computation indicates he is projected to earn a total of 184 days of GCT prior to his release.

*See id.* ¶ 20, Ex. A at 3.

Tirrell's projected 184 days of GCT are included in calculating his "Percent of

Statutory Term Served," and he has served 46.1 percent of his statutory term as of June 6,

2022.  *See id.* ¶¶ 17, 20, Ex. A at 3.  Because the BOP has included all of Tirrell's projected

184 days of GCT in his "Percent of Statutory Term Served," as he requests, this issue of

the petition should be dismissed as moot.  *See Potter*, 329 F.3d at 611.  None of the

exceptions to mootness apply.

21

However, Tirrell's claim that his full GTC credits should be immediately "applied" to his sentence and percent of term served, *see* ECF No. 1 at 7-8, is purely speculative at this juncture.  Because Tirrell has not yet been released, his GCT cannot be vested.  *See* 18 U.S.C. § 3624(b)(2).  This claim should, therefore, be dismissed as premature.

## II.   An Evidentiary Hearing is Unnecessary Because the Matter May Be Resolved on the Record.

A petitioner is not entitled to an evidentiary hearing if the petitioner's allegations are frivolous, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record.  *Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983).  In a habeas corpus proceeding, an evidentiary hearing is appropriate only where material facts are in dispute. *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996); *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995).  An evidentiary hearing is not required where the question is what conclusion can properly be drawn from the undisputed facts.  *See id.; see also United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005).

Respondent has provided sufficient facts based on the declarations and exhibits filed in this case.  An evidentiary hearing is unnecessary because this matter can be resolved on the basis of the record.

## **CONCLUSION**

The petition should be dismissed because Tirrell failed to exhaust his administrative remedies and because his request to have the BOP calculate his FTCs is moot, his request to have his FTCs applied to his sentence computation and percent of statutory term is premature, his request to have his full projected GCT credited to his percent of statutory term served is moot, and his request to have his full projected GCT immediately applied to his sentence and percent of statutory term served is premature.

Respectfully submitted,

Dated: July 28, 2022

ANDREW M. LUGER
United States Attorney

s/ Chad A. Blumenfield

BY: CHAD A. BLUMENFIELD
Assistant U.S. Attorney
Attorney ID Number 387296
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Chad.Blumenfield@usdoj.gov

Attorneys for Respondent